CALOGERO GIAMPAOLO, Landlord, *v.* ANTHONY ANATRA, Tenant.

Municipal Court of the City of New York, Borough of Brooklyn, March 29, 1948.

*Pino & Pizzitola* for landlord.

*King & Tumminelli* for tenant.

MARTUSCELLO, J. This is a summary proceeding against a tenant from month to month for nonpayment of increased rent alleged to have become due March 1, 1948. It is undisputed that

the Office of Housing Expediter, by an order dated and effective December 19, 1947, had duly increased said tenant's maximum rent from $24 to $41, and that in pursuance thereof, the landlord, by a writing personally served on the tenant on January 23, 1948, notified him that his rent would be $41 beginning March 1, 1948. Said writing, however, contained no notice to quit; and the tenant contends that the landlord should have served on him a thirty days' notice of termination of his tenancy as provided in section 232-a of the Real Property Law, and that in the absence thereof he was not obligated to pay the rent demanded. The question presented is whether the giving of such notice is necessary before a landlord becomes entitled to demand an authorized increased rent in view of the suspension of his possessory remedies under the Housing and Rent Act of 1947. (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*)

I have been unable to find any ruling in any case reported since Congress enacted the various emergency acts that is decisive of this question. The point, however, is not novel and was raised during the pendency of the so-called Emergency Rent Laws of 1920, which also provided for the suspension of a landlord's possessory remedies under certain circumstances, but the decisions thereon were not in accord. It may be added by way of passing that section 232-a of the Real Property Law is derived from chapter 209 of the Laws of 1920, and was part of the general housing legislation passed in said year.

In *Rogan* v. *Weiss* (115 Misc. 193) the landlord's complaint to recover the rental value of premises pursuant to the provisions of the afore-mentioned rent laws had been dismissed on ground that he failed to serve on the tenant the notice to quit specified in chapter 209 of the Laws of 1920; and the Appellate Term of the First Department, viewing the question presented to it from a realistic and practical standpoint, reversed said dismissal and ruled (pp. 194–195): " it would be unreasonable to hold that the legislature intended that before bringing an action against a monthly tenant * * * the landlord must serve upon the tenant a notice stating ' unless the tenant removes from said premises on the day on which his term expires, the landlord will commence summary proceedings under the statute to remove such tenant therefrom,' when the legislature itself has expressly declared that for a limited period the landlord shall have no right to commence such summary proceedings."

Subsequently, a contrary ruling was enunciated by the Appellate Division of the Second Department in the case of *A. & S. Construction Co.* v. *Brock* (201 App. Div. 584). In that case the

landlord had given a two weeks' notice of increase in rent and the question therein posed was whether a landlord could increase the rent of a tenant whose tenure was protected by the rent laws of 1920, without giving thirty days' notice that the tenant must surrender or pay the increased rent. After stating the purpose and origin of afore-mentioned chapter 209 of the Laws of 1920, said court held (pp. 585–586):

" As a consequence of these laws a monthly tenant or a tenant from month to month was secure in the possession of the premises for another month unless he received thirty days' notice to quit.

" Chapter 944 of the Laws of 1920, sections 5 and 6, provides in substance that in an action for rent or for use and occupation a judgment rendered for plaintiff shall contain a provision that if the rent is not paid within five days a warrant shall issue to remove the tenant from the premises.

" If the landlord may increase the tenant's rent by serving on him a notice of less than thirty days before the termination of the tenancy, he could then, under the provisions of chapter 944 of the Laws of 1920, obtain a judgment for the increased rent, and if the judgment is not paid within five days he is entitled to a warrant to dispossess the tenant. Such a result would *pro tanto* nullify the provisions of chapter 209 of the Laws of 1920, which entitles the tenant to continue in possession unless a thirty days' notice of the landlord's intention to terminate the lease is given. * * * a construction of these statutes leads to the conclusion that a tenant whose possession is protected by the Rent Laws cannot be removed in any manner, even by increase of rent, without the thirty days' notice."

Although the Appellate Term of this Department, by way of dictum, in *Weed* v. *Carswell* (117 Misc. 542), expressed views similar to those contained in the last-cited case, it had held previously thereto in *Rosenberg* v. *Radish* (191 N. Y. S. 701) that a tenant from month to month, upon whom had been served a thirty days' notice of increase in rent, by remaining in possession, acquiesced in the said increase, and, by implication, agreed to pay the increased rent, and that a notice of increase in rent must equal in length of time the notice required in a notice to quit. This previous ruling was distinguished in *Weed* v. *Carswell* (*supra*) by the statement that it was made prior to the enactment of the aforesaid emergency rent laws.

To get the proper perspective of the question presented in the above-cited cases, consideration must be given to the fact that chapter 209 of the Laws of 1920 was evolved from legislation

that was enacted primarily to prevent the removal of monthly tenants on short notice, and thereby afford them reasonable time to find housing accommodations, and that the spirit and purpose thereof were fulfilled by the time element in the notice to quit and not by the termination of the tenancy, which served to determine the rights that inured upon the formation of the tenancy and to fix new rights and duties upon the expiration thereof. With such view in mind, I am of the opinion that the rationale of the ruling in *A. & S. Construction Co.* v. *Brock* (*supra*) was sufficient for the conclusion that the provisions of chapter 944 of the Laws of 1920 could work a nullification of the provisions of chapter 209 of Laws of 1920, but it cannot prevail against the argument that, under the facts of said case, the service of a thirty days' notice of increase of rent not only fulfilled the purpose of the aforesaid chapter 209, as well, but was withal as effective, as the service of an impotent notice to·quit with a demand in the alternative for an increase in rent, which, in legal effect, was only a notice of increase in rent. And the validity of such argument was recognized by the Legislature when it clarified the situation resulting from the aforesaid discordant rulings by enacting chapter 664 of the Laws of 1922 and chapter 628 of the Laws of 1924, which required the plaintiff in an action for rent or rental value, to allege and prove that the amount demanded in the complaint was no greater than the rent or rental value paid by the defendant during the month preceding that which was the basis of the action, or, if greater, that at least thirty days' notice of such increase in writing was given to the defendent before such amount had been so increased. Be that as it may, this court is not required to follow the rule laid down in this department under the doctrine of *stare decisis* because the facts in the proceeding at bar are different in that they involve restrictions imposed by Federal legislation.

The Housing and Rent Act of 1947 and the Controlled Housing Rent Regulation, promulgated in pursuance thereof for this defense rental area, authorize the making of an order by the Housing Expediter increasing maximum rent, but do not provide under what circumstances a landlord becomes entitled to demand the rent therein fixed. Such an order, therefore, merely permits said landlord to increase the rent; and he becomes entitled thereto either by the express consent of the tenant to pay same, or by operation of law.

Prior to the enactment of the various Federal emergency acts, if a landlord served on his tenant a notice to quit with a demand in the alternative for increased rent, said tenant became liable

for the higher rent, by implication of law, by holding over after the expiration of his term. This was on the theory that he was a trepasser and, as such, had no right to hold over on his terms, and that the landlord could elect to accept him as a tenant on the terms proffered in the notice to quit.

The tenant's contention can be sustained only on the ground that service of a notice to quit would make him a holdover, otherwise, so he argues, there is no liability by operation of law. Subdivision (a) of section 209 of the Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1899) prohibits the removal of a tenant by action or proceeding, except upon certain grounds therein specified. None of said grounds, suffice it to say, could be availed of by the landlord herein. Said act, therefore, suspends the landlord's right to regard the tenant as a holdover, and thus renders a notice to quit ineffective. Consequently, it would be a fruitless formality to require a landlord to serve a notice to quit when it is of no effect. To hold that section 232-a of the Real Property Law requires such notice, not only disregards substance and makes a fetish of form, but makes it consistent for a recalcitrant tenant who has been served with a notice to quit to argue that he is liable for increased rent by operation of law only where he is a holdover, and that the aforesaid Housing and Rent Act prevents a notice to quit from making him such. The impasse created by upholding the tenant's contention reveals the futility thereof.

Accordingly, I hold that where a tenant refuses to pay an authorized increased rent, and he has been given sufficient and reasonable notice thereof, namely, written notice at least thirty days before the due date, so as to afford him reasonable time to find other housing accommodations if unwilling to pay a higher rent, he is deemed to acquiesce in said increased rental by remaining in possession after said due date, and impliedly agrees to pay same. (*Despard* v. *Walbridge,* 15 N. Y. 374; *Rosenberg* v. *Radish,* 191 N. Y. S. 701, *supra.*)

Final order entered for landlord.